**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WASH'N'ROLL, LLC, dba SPECIALTY LINEN SERVICE AND THE LAUNDRY STOP, INC., *et al.*, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:14-CV-02780 |
| | | JUDGE JOHN R. ADAMS |
| Plaintiffs, | | |
| vs. | | |
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | | |

This matter is before the Court on the motion for summary judgment of Defendant Selective Insurance Company of the Southeast ("Selective") on the claims of Plaintiffs Wash'N'Roll, LLC, dba Specialty Linen Service and The Laundry Stop, Inc. ("Wash'N'Roll") and Carl Vaccar (collectively, "Plaintiffs"). Selective moves for summary judgment on Plaintiffs' breach of contract and bad faith claims, and on Selective's counterclaim for declaratory judgment. In the alternative, Selective requests partial summary judgment on Plaintiffs' bad faith claim. Plaintiffs have opposed Selective's motion. For the reasons that follow, Selective's motion for summary judgment (Doc. #48) is GRANTED.

I.  **FACTS**

Mr. Vaccar operated Wash'N'Roll, a commercial laundry and linens leasing business. Wash'N'Roll conducted its primary business activities at 5050 Youngstown Poland Road in Youngstown, Ohio. This location was a series of store fronts that housed Wash'N'Roll's industrial cleaning equipment. Wash'N'Roll also leased warehouse space.

1

Selective issued an insurance policy to Wash'N'Roll to cover laundry service.  The policy contained coverage for theft with a $397,000 limit per occurrence.  The coverage extended to both Wash'N'Roll's main business location and the company's leased warehouse space.

The insurance policy contained coverage conditions that spelled out certain duties of the insured in the event of loss.  In part, the policy provided:

> (a) You must see that the following are done in the event of loss:
>
>> (1) Notify the police if a law may have been broken.
>>
>> (2) Give us prompt notice of the direct physical loss or damage.  Include a description of the property involved.
>>
>> (3) As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.
>>
>> (4) Take all reasonable steps necessary to protect the Covered Property from further damage, and keep a record of your expenses * * *.
>>
>> (5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. * * * [P]ermit us to make copies from your books and records.
>>
>> (6) Send us your signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.
>>
>> (7) Cooperate with us in the investigation or settlement of the claim.
>>
>> (8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.
>
> (b) We may examine any insured under oath * * *.

(Doc. #50-7, ECF p. 67.)

The policy also contained a time limitation on lawsuits under the contract.  The policy stated:

2

D.   LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(*Id.*, ECF p. 72.)

Plaintiffs were victims of theft from the leased warehouse space. It appears that another tenant unaffiliated with Plaintiffs filed police reports regarding the theft on April 29, 2011 and May 21, 2011. (Doc. #50-10, p. 13-15.) Neither Wash'N'Roll nor Mr. Vaccar were listed on the police reports. (*Id.*) It is unclear whether there was a single theft or two separate occurrences.

Mr. Vaccar did not report the theft to Selective until Plaintiffs made an insurance claim on June 1, 2011. This appears to be the date of loss Selective assigned for the theft.

Kristen Badessa was the Selective adjuster assigned to Plaintiffs' loss claim. Upon receiving the claim, she twice unsuccessfully attempted to contact Mr. Vaccar by telephone. (Doc. #50-1, Badessa Dep. p. 19.) Consequently, Ms. Badessa sent Mr. Vaccar a letter on June 9, 2011 asking him to contact her regarding his claim. (*Id*. p. 20.) Although it would be Ms. Badessa's practice to take a recorded statement on every claim, Mr. Vaccar was "never able to do it." (*Id.* p. 22.)

It was Ms. Badessa's responsibility to investigate and either approve or deny the claim. To investigate, Ms. Badessa contacted an independent adjuster who inspected the property. (*Id.* p. 16.) She also involved the Special Investigations Unit ("SIU") of Selective to further investigate due to discrepancies between the police reports and the reported date of loss. (*Id.*)

Douglas Door was the SIU investigator assigned to Plaintiffs' claim. (Doc. #50-8, Door

3

Dep. p. 51.) Mr. Door conducted a background investigation of Mr. Vaccar and various companies Mr. Vaccar owned. He also took a statement from Mr. Vaccar. Mr. Door's investigation revealed that Mr. Vaccar had multiple tax liens and failed businesses. (*Id.* at 57.) Mr. Door also found that Mr. Vaccar did not have documentation to support his claim. (*Id.* at 45.) He observed that Mr. Vaccar "never reported property stolen" to the police and "never submitted any documentation to support the amount of property that he claimed was taken or stolen or destroyed." (*Id.*) According to Mr. Door, the lack of documentation to support a claimed inventory shortage was unusual because "[b]usinesses typically keep good records because it's to their financial advantage to do so." (*Id.* at 44.) Documents with the potential to prove ownership of items prior to loss include receipts, owner's manuals, instruction books, photographs, tax receipts, customer invoices, and tax records. (Doc. #50-1, Badessa Dep. p. 40.) Mr. Door ultimately recommended that Selective deny Plaintiffs' claim. (Doc. #50-8, Door Dep. p. 44.)

On February 14, 2012, Badessa sent a denial letter to Mr. Vaccar denying Plaintiffs' claim. (Doc. #50-1, Badessa Dep. p. 84.) She cited the above-mentioned conditions of loss section of the policy and advised Mr. Vaccar that he had never provided any documentation in support of his claim. (Doc. #50-6.) Ms. Badessa then closed the file and went on maternity leave. (Doc. #50-1, Badessa Dep. p. 33.)

Todd Schaffer was Ms. Badessa's supervisor in claims. Plaintiffs contacted Mr. Schaffer after the denial of their claim to set up a meeting. In October 2012, Mr. Vaccar sent Mr. Schaffer a vague list of items that he alleged were stolen from the warehouse. (Doc. #50-17.) The list included things such as "[a]ll contents of garage[,]" and "[a]ll contents of maintenance [d]epartment (125,000 sq' hospital)[,]" but was not accompanied by any supporting

4

documentation to show that Plaintiffs owned the stolen items and that they owned the items prior to the loss. (Doc. #50-11, Schaffer Dep. p. 83-84.) Nonetheless, Mr. Schaffer agreed to reopen Plaintiffs' claim file and scheduled an examination of Mr. Vaccar under oath. (*Id.* p. 24.) Thereafter, on February 5, 2013, Mr. Vaccar provided a more detailed list of items allegedly stolen from the warehouse. (*Id.* p. 40.) Once again, Plaintiffs neglected to provide any documentation to establish proof of ownership of any stolen items prior to the loss. (Doc. #21, Vaccar Dep. p. 194.)

At the conclusion of the examination under oath, Mr. Vaccar agreed that not all of the items on the February 5, 2013 list were stolen. (Doc. #24, p. 148.) Plaintiffs provided Selective with a new list in July 2013. The list was replete with items – such as electronics and plumbing supplies – that have no discernable connection to a linens business. (Doc. #50-25.) The total amount claimed on this list was $387,642. (*Id.*)

On July 26, 2013, Selective denied Plaintiffs' claim a second time. (Doc. #50-7, Schaffer Dep. p. 110.) Plaintiffs filed this lawsuit on November 4, 2014.

In this lawsuit Plaintiffs allege breach of contract and bad faith. Selective has moved for summary judgment on these claims and Selective's counterclaim for declaratory judgment. In the alternative, Selective requests partial summary judgment on Plaintiffs' bad faith claim. For the reasons explained herein, the Court finds that no issue of material fact remains for a jury to decide on any of Plaintiffs' claims. Consequently, Selective is entitled to summary judgment on Plaintiffs' claims and Selective's counterclaim for declaratory judgment.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

5

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir.1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III.   LAW AND ANALYSIS

#### A. Breach of Contract

Selective raises numerous grounds for summary judgment on Plaintiffs' breach of contract claim, including that: (1) Plaintiffs failed to file suit within the policy's two-year time limitation for legal action; (2) Mr. Vaccar failed to claim the stolen inventory in his bankruptcy

6

proceedings or on tax returns, and thus is judicially estopped from bringing suit over insurance coverage for the lost inventory; and (3) Plaintiffs failed to comply with the policy's conditions of loss. The Court agrees that Plaintiffs failed to file suit within the contractually-specified time. Because this finding is dispositive and entitles Selective to summary judgment, the Court does not need to address Selective's additional arguments.

Ohio statutory law places an eight-year statute of limitations on contract actions. R.C. 2305.06. However, parties to an insurance contract may establish an alternative limitations period so long as a "reasonable time for suit is provided." *Lane v. Grange Mut. Co.*, 45 Ohio St.3d 63, 64 (1989). In clear and unambiguous terms, the policy at issue in this case bars actions not "brought within [two] years after the date on which the direct physical loss or damage occurred." The Supreme Court of Ohio routinely enforces suit limitation provisions with shorter durations than the Selective policy's two-year period. *See Houshnell v. Am. States Ins. Co.*, 67 Ohio St.2d 427 (1981) (finding a suit limitation period of one year to be reasonable); *Appel v. Cooper Ins. Co.*, 76 Ohio St. 52 (1907) (finding a suit limitation period of six months to be reasonable). Accordingly, the two-year limitations period at issue falls well within the reasonableness parameters established by Ohio law.

Plaintiffs argue that the "Defendant waived the imposition of said time requirement by their [sic] acts." Specifically, Plaintiffs claim that waiver occurred because Selective "consider[ed] the possibility of paying the claim well into July of 2013, which is beyond that [contractual] two-year limitation period." Plaintiff cites the fact that Selective re-opened the claim after the original denial, conducted an examination under oath of Mr. Vaccar, and accepted additional documentation from Plaintiffs after the two-year time bar had expired. This Court disagrees.

This matter is comparable to *Broadview Sav. & Loan v. Buckeye Union Ins. Co.*, 70 Ohio St.2d 47 (1982).  In that case, as here, the insurer did not complete the investigation of the claim until after the expiration of the time for filing suit.  *Id.* at 50.  Nonetheless, the Supreme Court of Ohio enforced the suit limitation provision.  *Id.*  The court held that, under Ohio law, the mere fact that an insurer's investigation continues beyond the contractual time for suit does not constitute a waiver of the suit limitation provision.  *Id.*; *see also Thomas v. Allstate Ins. Co.*, 974 F.2d 706 (6th Cir. 1992) (the process of investigation by an insurer does not constitute waiver); *Kish v. Chubb Group of Ins. Cos.*, No.4:04CV02224, 2005 WL 1683667 (N.D. Ohio July 19, 2005) (the fact that the insurer's investigation continues beyond the contractual time for suit is not a waiver of the suit limitation provision).  This Court is constrained to reach the same conclusion here.  Accordingly, the fact that Selective's re-opened investigation continued beyond the policy's time limitation for legal action does not equate to waiver of that policy provision.

Irrespective of any ongoing investigation by the insurance company, a waiver of the contractual limitation on time in which to sue occurs only when the insurance company commits an act "which evidences an admission of liability upon the policy, and resulting reliance by the insured thereon."  *Hounshell*, 67 Ohio St.2d at 432.  Plaintiffs have not pointed to any evidence of any admission by Selective to liability under the policy.  Accordingly, Plaintiffs have not established that Selective waived the contractual time for legal action.

In this case, the relevant timeline is as follows.  On April 29 and May 21, 2011, police reports regarding the theft were filed.  On June 1, 2011, Plaintiffs notified Selective of the loss when they made a claim, and Selective assigned this as the date of loss.  On February 14, 2012, Ms. Badessa sent a denial of claim letter to Mr. Vaccar.  On July 26, 2013, Selective denied Plaintiffs' claim a second time after examining Mr. Vaccar under oath.  On November 4, 2014,

8

Plaintiffs filed the instant lawsuit.

Considering the June 1, 2011 date of loss, the contractual two-year limitation on legal action required Plaintiffs to file a coverage lawsuit on or before June 1, 2013. Plaintiffs' November 4, 2014 filing was almost a year and a half out of time. Accordingly, Selective is entitled to summary judgment on the ground that Plaintiffs failed to file suit within the policy's two-year time limitation for legal action.

### B. Bad Faith

A cause of action in tort in Ohio arises when an insurer breaches its duty to the insured to act in good faith. *Thomas*, 974 F.2d at 711. "This claim exists irrespective of the contractual liability, and the limitation period in the contract does not apply to such actions." *Id.*

On a motion for summary judgment, "Ohio law directs courts to assess bad-faith-denial of-coverage claims from the perspective of what information motivated the insurer's denial." *Smith v. Allstate Indem. Co.*, 304 Fed. Appx. 430, 432 (6th Cir. 2008). Viewing evidence in the light most favorable to the insured, courts ask whether "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 630 (1992). An aggrieved insured must respond to the insurer's motion "with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim." *Id.*

In this case, Selective has provided evidence that Plaintiffs' claim was fairly debatable. Plaintiffs never provided Selective with any documentation to establish the ownership or cost of any item that was claimed stolen. Plaintiffs could not produce inventories, receipts, cancelled

9

checks, bills of sale, bills of lading, customer lists, vendor lists, or any other type of proof that they owned the stolen property prior to the theft, or that the property ever even existed.  Mr. Vaccar admitted that he had nothing to document that he actually owned the stolen property, and could not provide anything to show the amount of the stolen property.  Moreover, the vast majority of items claimed stolen, which included plumbing supplies, office machines, furniture, and electronics, had no discernable connection to the linens business covered under the policy.  The record also reflects that Plaintiffs were in financial distress and subject to tax liens when the insurance claim was made.  Further, Plaintiffs arguably did not comply with the policy's conditions of loss.  Indeed, Plaintiffs did not cooperate with Selective's investigation insofar as they did not provide proof of ownership or loss, and Plaintiffs never reported the theft to police as they were required to do under the policy's conditions of loss provisions.  In addition, Selective's expert testified that Selective's investigation and communication with Plaintiffs met industry standards for claims handling.

On the other hand, Plaintiffs have not met their burden to produce evidence tending to show that Selective had no reasonable justification to deny Plaintiffs' claim.  Plaintiffs fail to cite any specific facts that would demonstrate that Selective acted other than in good faith.  Plaintiffs' vague accusation that Selective acted "inconsistent with [its] duties" does not constitute a specific fact that would permit Plaintiffs' bad faith claim to survive summary judgment.

Because Plaintiffs have not pointed to any specific evidence to support their bad faith claim, there is no material issue of fact for a jury to decide on this issue.  Selective is entitled to summary judgment on Plaintiffs' bad faith claim.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, Selective's motion for summary judgment (Doc. #48) is GRANTED in its entirety.

**IT IS SO ORDERED.**

<u>s/John R. Adams</u>
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

**DATED**: MARCH 28, 2017